

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 22, 2021**

United States Bankruptcy Judge

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **KEVIN GENTER,** | § | **CASE NO. 16-34808-SGJ-7** |
| | § | **(Chapter 7)** |
| Debtor. | § | |
| | § | |
| | § | |
| **DIANE G. REED, TRUSTEE,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 18-03361-sgj** |
| | § | |
| **ROGER GENTER,** *et. al.* | § | |
| | § | |
| Defendants. | § | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

# I. FINDINGS OF FACT

**A.      Procedural Background and Parties.**

1.      Diane G. Reed is the duly appointed Chapter 7 Bankruptcy Trustee (the "Trustee") for the bankruptcy estate of Kevin Genter. She was appointed in Case No. 16-34808 in the Northern District of Texas, Dallas Division and is the Plaintiff in this adversary proceeding.

2.      Kevin Genter is the Debtor (the "Debtor") in the bankruptcy case underlying this adversary proceeding.

3.      Roger Genter is an individual that resides in Texas and is a Defendant in this adversary proceeding. Roger Genter is the father of the Debtor. Roger Genter was the recipient of a fraudulent transfer of 49% stock interest in Genter's Detailing, Inc., a family business he co-owned with his son from 2005 through at least 2013.

4.      Susie Genter is an individual that resides in Texas and is a Defendant in this adversary proceeding. Susie Genter is the mother of the Debtor. Susie Genter was the recipient of a fraudulent transfer of a classic 1963 Chevrolet Impala SS.

5.      On December 15, 2016, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (the "Petition Date"), which commenced the underlying bankruptcy case.

6.      The Trustee filed her Original Complaint initiating this adversary proceeding on December 12, 2018.

7.      Defendants filed a Motion to Dismiss on January 11, 2019, which motion was denied subject to the Trustee's re-pleading certain factual allegations.

8.      The Trustee filed her First Amended Complaint on March 28, 2019, which clarified her claims and alleged additional facts consistent with the Court's previous order.

9.      On April 11, 2019, Defendants filed a second Motion to Dismiss. The Court denied this motion on July 18, 2019.

10.      Defendants never filed an answer denying the allegations in either the Trustee's Original or First Amended Complaint. Defendants sought leave to file an answer for the first time on January 29, 2021. The Court did permit a late-filed answer, but declined to permit Defendants to file affirmative defenses or affirmative claims for relief. Defendants did file an answer before trial that issued bare denials of many of the Trustee's allegations.

11.      The Trustee filed a Motion for Partial Summary Judgment Establishing Actual Fraudulent Transfer Liability on January 15, 2021. The Trustee's motion sought to establish actual fraudulent transfer liability against Defendant Roger Genter as the transferee of a 49% stock interest in Genter's Detailing, Inc.

12.      On February 22, 2021, the Court heard argument on the Trustee's Motion and granted the requested relief in its entirety, which established Defendant Roger Genter's liability for an actual fraudulent transfer of a 49% stock interest in Genter's Detailing, Inc.

13.      Defendants filed a No-Evidence Motion for Summary Judgment on January 15, 2021, which sought to dismiss all of the Trustee's claims for lack of evidence.

14.      On February 22, 2021, the Court denied Defendants' No-Evidence Motion for Summary Judgment.

**B.      General Factual Background**

15.      On November 2, 2013, Breisha Bell was a passenger on the back of a motorcycle driven by the Debtor. *See* Trustee's Exhibit 21 (Original Petition). As the Debtor was traveling northbound on the Sam Rayburn Tollway in Dallas, he began performing multiple wheelies while speeding, causing Bell to fall off the back of the Debtor's motorcycle. *Id.*

16.     On the day of the incident, the value of the Debtor's assets fell far below the Debtor's liability due to the exposure to a significant personal injury suit. Further, the Debtor became immediately aware that he had almost killed Bell and would be exposed to significant personal liability, so he began transferring his assets to family members. After a full jury trial, a judgment was entered against the Debtor on October 12, 2016 in the amount of $11,924,843.60. *See* Trustee's Exhibit 22 (Final Judgment).

17.     Although insufficient to satisfy Bell's judgment in full, before the motorcycle wreck the Debtor had substantial assets. The Debtor possessed ownership interests in Genter's Detailing, Inc. and Genter's, LLC. These were not insignificant assets as Genter's Detailing, Inc.'s reported income for the year immediately following Bell's injuries was in excess of $5 million. *See* Trustee's Exhibit 7 (2014 Genter's Detailing, Inc. Tax Returns).

18.     During this same general time-frame, the Debtor and his wife, Nubia Genter, declared a gross income of $437,906.00 in 2013 and $358,012.00 in 2014. *See* Trustee's Exhibits 6 and 10 (Kevin Genter 2013 and 2014 tax returns).

19.     From January 1, 2013 to December 31, 2013, Genter's Detailing, Inc. reported gross sales of $6,347,541.00. *See* Trustee's Exhibit 4 (2013 Genter's Detailing, Inc. Tax Returns). Genter's Detailing, Inc. reported cash assets of $363,879.00. *Id.* Genter's Detailing, Inc. reported buildings and other depreciable assets of $537,492.00. *Id.*

20.     Genter's Detailing, Inc. had two stock owners, Kevin Genter and Roger Genter, his father.

21.     Despite the assets and profitability of Genter's Detailing, Inc., Kevin Genter transferred his 49% ownership interest to Roger Genter. The transfer was made effective on January 1, 2014 and was made for no value. *See* Trustee's Exhibit 14 (Stock Transfer Agreement).

22.     Kevin Genter was insolvent at the time of the transfer, considering the contingent liability of his exposure to a judgment by Bell.

23.     At some point, Roger Genter realized that this naked transfer of the ownership interest was a textbook fraudulent transfer because a second version of the agreement was drafted and executed that purported to provide consideration for the exchange of stock. The stock sale allegedly extinguished an undocumented "loan" between father and son of $160,929.68. *See* Trustee's Exhibit 13 (Stock Purchase Agreement).

24.     The transfer was made effective as of January 1, 2014, but the actual document was ***actually signed*** sometime in 2015, well after the date of the initial lawsuit and the exposure to significant civil liability was known. *See* Trustee's Exhibit 11 (Roger Genter Interrogatory Response No. 6). With the Debtor's knowledge of the significance of creditor Bell's injuries, it is clear he made this transfer with actual intent to hinder, delay or defraud creditor Bell.

25.     The stock transfer was not insignificant because Genter's Detailing, Inc. was a successful and lucrative business. According to the qualified expert opinion of Hill Johnson the value of the 49% stock interest of Genter's Detailing, Inc. at or about the time of the effective date of transfer was $1,194,500.00. *See* Trustee's Exhibit 1 and 2. The trial testimony of Hill Johnson was credible, reliable, and not controverted.

26.     The stock has declined in value over the time since the transfer effective January 1, 2014. As of the Petition Date, the qualified expert opinion of Hill Johnson is that the value of the 49% stock interest would have been approximately $726,200.00. *Id.* In addition, the Trustee's expert also opined that the value of the 49% stock interest two years after the Petition Date would be approximately $369,100.00. *Id.*

27.     In addition to the fraudulent transfer of the 49% stock interest in Genter's Detailing, Inc., the Debtor also engaged in a fraudulent transfer with respect to a classic 1963 Chevrolet Impala SS. On May 1, 2013, the Debtor allegedly executed a Certificate of Title that purported to transfer ownership of a 1963 Chevrolet Impala SS with Vehicle Identification Number 31847F309119 to his mother, Susie Genter. *See* Trustee's Exhibit 16.

28.     Defendant Susie Genter contends that the transfer was in exchange for personal services she performed in helping the Debtor repair his home before it was sold in November 2013. The Debtor's mother claims that $2,400.00 was owed to her as a result of these cleaning and repair services and that the transfer of the vehicle was in payment for those services.

29.     Defendant Susie Genter has no written documentation evidencing the indebtedness. Defendant Susie Genter has no receipts or other corroborating evidence that any repairs or cleaning services were ever performed on the Debtor's home before May 1, 2013, which is the date she allegedly took title to the vehicle. Defendant Susie Genter's testimony is not credible and belied by the documentary evidence, which indicates the documentation was, in fact, back-dated to conceal the transfer.

30.     Defendant Susie Genter also claims that the agreement was signed on May 1, 2013 and that her friend and notary public, Kim Littles, performed the notarization. The Certificate of Title bears a notary stamp from Kim Littles, but the stamp notes that her commission expires on March 15, 2018. *See* Trustee's Exhibit 16 (Bill of Sale and Certificate of Title).

31.     Kim Littles was a notary public at the time of the signing of the Certificate of Title according to the Texas Secretary of State database for notary public records. But Kim Littles notary commission that expired on March 15, 2018 actually began on March 15, 2014, which is nearly a full year after the purported execution of the Certificate of Title. *See* Trustee's Exhibit 34 (Notary

Public Records). Kim Littles held a commission as a notary public from March 15, 2010 through March 15, 2014 as well. *Id.* If the Certificate of Title was signed on May 1, 2013 and notarized contemporaneously, the notary stamp would have denoted a commission expiring on March 15, 2014. This is strong circumstantial evidence of an intentional backdating of the Certificate of Title.

32.     In addition, the Texas Department of Motor Vehicles show that the 1963 Chevrolet Impala SS registration was renewed in the Debtor's name on April 1, 2018. *See* Trustee's Exhibit 35 (Declaration of Alan Davis describing DMV registration records). Furthermore, the Debtor apparently sold the car sometime in 2018, two years after filing his bankruptcy. *Id.* The Debtor also affirmatively disclosed that he owned no vehicles or made any transfers related to this vehicle in his Schedules or Statement of Financial Affairs. Defendant Susie Genter testified, however, that the Debtor did actually pay her $2,400.00 in cash from the sale of this vehicle. *See* Trustee's Exhibits 40 and 41 (Bankruptcy Schedules and Statement of Financial Affairs). This is strong circumstantial evidence that the Debtor did not actually transfer title to his mother on May 1, 2013, but did so at a later date.

33.     The Debtor received nothing of value in exchange for the vehicle. Even if the Court credits Defendant Susie Genter's testimony entirely, the Debtor received only $2,400 worth of cleaning services that he subsequently repaid. This is not value, much less reasonably equivalent value. According to the current average valuation information from the National Automobile Dealers Association, which is a generally accepted and widely used standard valuation for used automobiles, the 1963 Chevrolet Impala SS is worth approximately $31,700. *See* Trustee's Exhibit 32.

34.     The factual findings supporting the Court's ruling on the Trustee's Motion for Partial Summary Judgment Establishing Actual Fraudulent Transfer Liability are also expressly incorporated by reference herein.

## II. CONCLUSIONS OF LAW

### A.     Jurisdiction and Venue.

35.     The Court finds that it has subject matter jurisdiction of this matter pursuant to 28 U.S.C. §§ 157 and 1334(b) because this action arises under, arises in and/or is related to Chapter 7 of the Bankruptcy Code. This is a proceeding seeking to determine, void and recover fraudulent conveyances, and thus is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H). The Trustee is pursuing claims under 11 U.S.C. § 544 and 548 and, thus, the Court has jurisdiction as well under 28 U.S.C. § 1331. The Court also has supplemental jurisdiction over the state law claims asserted herein under 28 U.S.C. §1367.

36.     The Court finds that the parties have both knowingly and voluntarily consented both expressly and, at a minimum, impliedly to the Court's authority to enter final judgments in this adversary proceeding and the Court is satisfied that subject matter jurisdiction exists in this adversary proceeding.

### B.     The Trustee's Claims.

37.     The Trustee brings fraudulent conveyance claims related to two transfers between the Debtor and his parents, Roger and Susie Genter. The Trustee sues for the avoidance and recovery of value related to the transfer of a 49% stock interest in a successful small business named Genter's Detailing, Inc. The Trustee also sues for the avoidance and recovery of value related to the transfer of a 1963 Chevrolet Impala SS. The Trustee asserts multiple theories under

both the Bankruptcy Code and the Texas Uniform Fraudulent Transfer Act. The Court will address

each in turn below.

### 1. Actual Fraudulent Transfer Pursuant to 11 U.S.C. § 548(a)(1)(A).

38.     Section 548 of the Bankruptcy Code provides in relevant part:

The trustee may avoid any transfer of an interest of the debtor in property … that was made … on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily – made such transfer … with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made . . . indebted.

11 U.S.C. § 548(a)(1)(A). Section 548(a)(1)(A) requires proof of "actual" intent for any one of

three purposes to avoid paying a creditor – intent to "hinder *or* delay *or* defraud." *In re Silver State*

*Holdings, Assignee—7901 Boulevard 26, LLC*, 2020 WL 7414434 at *18 (Bankr. N.D. Tex. Dec.

17, 2020) (emphasis in original). "Because a court cannot expect a debtor to admit his or her intent

to hinder, delay, or defraud under oath, courts look to badges of fraud as circumstantial evidence

of a debtor's subjective state of mind." *Id.*

39.     Courts typically examine the following "badges of fraud":

(1) The transfer or obligation was to an insider;

(2) The debtor retained possession or control of the property transferred after the transfer;

(3) The transfer or obligation was disclosed or concealed;

(4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) The transfer was of substantially all the debtor's assets;

(6) The debtor absconded;

(7) The debtor removed or concealed assets;

(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred;

(9) The debtor was insolvent or became insolvent shortly after the transfer was made;

(10)   The transfer occurred before or shortly after a substantial debt was incurred;

(11)   The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor;

(12)   The existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and

(13)   The general chronology of events and transactions under inquiry.

*See id.* (citing *Soza v. Hill*, 542 F.3d 1060, 1067 (5th Cir. 2008)).

40.    Importantly, however, "not all, or even a majority, of the 'badges of fraud' must exist to find actual fraud; instead '[w]hen several of these indicia of fraud are found, they can be a proper basis for an inference of fraud.'" *Id.* at *19 (citing *Roland v. United States*, 838 F.2d 1400, 1403 (5th Cir. 1988); *Williams v. Houston Plants & Garden World, Inc.*, 508 B.R. 19, 26 (S.D. Tex. 2014)).

41.    Plaintiff established that no genuine issue of material fact exists regarding the elements of an actual fraudulent transfer of a 49% stock interest in Genter's Detailing, Inc. The Court granted the Plaintiff's Motion for Partial Summary Judgment on February 22, 2021 and the Court hereby adopts and incorporates the rulings issued during the hearing.

42.    To be clear, there is no dispute that the 49% stock interest was property of the Debtor or was property that the Debtor held an interest in before the transfer. Both bankruptcy law and Texas property law are clear that stock is a property interest that becomes property of the estate when a debtor files bankruptcy. *See In re Mujica*, 68 F.3d 469 (5th Cir. 1995) (per curiam) (noting stock owned by debtor became property of the estate); *see e.g., Vallone v. Vallone*, 644 S.W.2d 455 (Tex. 1982) (treating stock as personal property interest to be divided in marital estate). "Stock

is undoubtedly considered property of the stockholder; thus, the transfer of it is a transfer of an 'interest of the debtor in property.'" *In re Wolf*, 595 B.R. 735, 777 (Bankr. N.D. Ill. 2018).

43.     The transfer also took place within two years of the Petition Date. The Trustee established the Debtor executed an agreement to transfer the 49% stock interest sometime in 2015, the year before the bankruptcy filing, and that the written documents were backdated to make the transfer "effective" as of January 1, 2014.

44.     The credible, reliable, and uncontroverted evidence established that the value of the stock transferred at the date of the transfer was $1,194,500.00. As a result, the actual fraudulent transfer damaged the estate in this amount and the Trustee is entitled to recover the value of the stock transfer at the time of the transfer pursuant to 11 U.S.C. § 550.

45.     The Trustee also asserts an actual fraudulent transfer claim related to the transfer of a 1963 Chevrolet Impala SS. The Court finds that this vehicle was transferred fraudulently and with actual intent because numerous "badges of fraud" exist concerning the transfer. The transfer was made to the Debtor's mother, a statutory insider. The transfer was concealed because the Certificate of Title appears to be backdated and may not have even occurred until after the Petition Date. Although the Certificate of Title is dated May 1, 2013, the document bears a notary stamp showing that the notary signed it sometime after March 15, 2014, which would strongly indicate that the notary witnessed a signature on the Certificate of Title well after May 1, 2013, if at all. Further, the vehicle registration records in Texas appear to show that the Debtor himself renewed the registration of the vehicle in his name as late as 2018. In addition, it does not appear that the Debtor received any value in exchange for the vehicle at all. The Debtor's mother claimed to have provided repair and cleaning services some six months before the Debtor sold his home in 2013 and that the vehicle transfer was in satisfaction of that "debt." But there is no documented loan

and no evidence of indebtedness between mother and son. Further, the transfer of the vehicle fits the pattern of deception the Debtor engaged in with respect to the 49% stock interest and is consistent with an effort to hide or conceal assets from creditors.

46.     The Debtor and the transferee no longer own the vehicle and cannot return the vehicle. The average value of the vehicle according to widely accepted used car valuation reports is approximately $31,700.00. The Trustee is entitled to recover this amount in damages to the estate and recover the value of the transfer pursuant to 11 U.S.C. § 550.

**2.     Constructive Fraudulent Transfer Pursuant to 11 U.S.C. § 548(a)(1)(B).**

47.     The Trustee also asserts fraudulent transfer claims for these assets pursuant to the Bankruptcy Code's constructive fraudulent transfer provisions. To recover under a constructive fraudulent transfer theory, the Trustee must establish that the Debtor "received less than a reasonably equivalent value in exchange for such transfer" and that the Debtor was "insolvent on the date that such transfer was made." 11 U.S.C. § 548(a)(1)(B).

48.     The Court has already found that the Debtor was insolvent at the time of the transfer when it issued its ruling on the Trustee's Motion for Partial Summary Judgment Establishing Actual Fraudulent Transfer Liability on February 22, 2021. At the time of both the transfer of the 49% stock interest and at the time of the vehicle transfer, the Debtor was insolvent as a result of the massive contingent liability he owed due to Breisha Bell's gross negligence claim against him. The contingent liability arose on November 2, 2013 and was liquidated on October 2, 2016 in the amount of approximately $12 million. Both of these transfers were made at a time when the contingent liability completely overwhelmed the Debtor's assets and rendered him insolvent.

49.     The Court also finds that the Debtor received less than reasonably equivalent value in exchange for both the 49% stock interest transfer and the 1963 Chevrolet Impala SS transfer.

With respect to the stock interest, there is no evidence the Debtor received anything of value from his father, Roger Genter, who received the stock. Defendant Roger Genter asserts that he paid personal expenses of the Debtor in the amount of approximately $160,000 before the transfer. But these expenses were paid by Genter's Detailing, Inc., not Roger Genter. And, in any event, the expenses paid were not in any way reasonably equivalent to the value of the stock ($1,194,500.00) at the time of the transfer. Defendant Susie Genter asserts she provided cleaning and repair services in exchange for the vehicle title. But there is no evidence of the value of these services or that any indebtedness was even created such that the transfer should be considered in exchange for antecedent debt or reasonably equivalent value.

50. The Court finds that there was no exchange of reasonably equivalent value for either transfer and as such the constructive fraudulent transfer provisions of the Bankruptcy Code are applicable and justify the Trustee recovering the value of the transfers pursuant to 11 U.S.C. § 550.

**3. Actual and Constructive Fraudulent Transfer Pursuant to Texas Business & Commerce Code § 24.005(a)(1) and (2).**

51. The Trustee asserts companion claims under the Texas Uniform Fraudulent Transfer Act. The Trustee brings the claims pursuant to her authority under 11 U.S.C. § 544. Section 24.005(a) of the Texas Business and Commerce Code provides:

> [a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made . . . if the debtor made the transfer . . . (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: [was insolvent].

52. Section 24.005(b) of the Texas Business and Commerce Code also lists the same badges of fraud previously outlined and discussed above. In general, the provisions of actual and

constructive fraudulent transfer claims under the Texas Uniform Fraudulent Transfer Act operate and are treated like claims brought under Section 548 of the Bankruptcy Code. *See e.g., In re Silver State Holdings, Assignee – 7901 Boulevard 26, LLC*, 2020 WL 7414434 at \*23-25 (Bankr. N.D. Tex. December 17, 2020) (treating § 24.005 claims similarly to § 548(a)(1) claims).

53.     The Trustee may pursue claims up to four years before the Petition Date under the Texas Uniform Fraudulent Transfer Act. *See* Tex. Bus. & Comm. Code § 24.010. The transfers at issue in this case were made within the four-year look back period.

54.     Based on the Court's previous findings with respect to the transfer of the 49% stock interest and the vehicle, the Trustee is also entitled to recovery under the Texas Uniform Fraudulent Transfer Act.

**4.     The Trustee Is Entitled To An Attorneys' Fee Award.**

55.     Section 24.013 of the Texas Business and Commerce Code permits a party to recover costs and reasonable attorneys' fees as are equitable and just. The Trustee is entitled to an award of costs and reasonable attorneys' fees and the Court, which award shall be established by motion of the Trustee before entry of a final judgment.

Submitted By:


    ***/s/ Sean J. McCaffity***
Sean J. McCaffity
State Bar No. 24013122
Andrew B. Sommerman
State Bar No. 18842150
3811 Turtle Creek Boulevard, Suite 1400
Dallas, Texas 75219
214/720-0720 (Telephone)
214/720-0184 (Facsimile)
Andrew@textrial.com

SPECIAL LITIGATION COUNSEL FOR TRUSTEE